UNITED STATES DISTRICT COURT§
EASTERN DISTRICT OF LOUISIANA

RICHARD GREENWOOD                          CIVIL ACTION

VERSUS                                     NUMBER: 16-11925

SHERIFF JACK STRAIN, ET AL                 SECTION: "B"(3)


## OPINION

### STANDING

Defendants move to dismiss the claims of Plaintiff, on his own behalf and on behalf of his deceased son Darien Greenwood, because the decedent has a son. Rec. Doc. 131; Rec. Doc. 155. Plaintiff opposes that motion construing it as untimely, abrogates parental rights of association with their children, and based on an unconstitutional state scheme for wrongful death compensation that would deprive him from seeking relief under 42 U.S.C. §1983. Rec. Doc. 135; Rec. Doc. 151.

On October 20, 2015, Darien Greenwood and Dean Perkins were discovered walking out of a residence by the returning owner of same. The homeowner noted the license plate number of the vehicle that Greenwood and Perkins entered and departed from the residence. After the homeowner notified the St. Tammany Parish Sheriff's Office ("STPSO") of the burglary, officer pursued the vehicle shortly after the homeowner's call. While initially evasive, the vehicle stopped, and the suspects, Greenwood and Perkins, fled on

foot into a wooded area. Perkins was eventually apprehended, but Greenwood evaded capture for several hours by hiding out in a discarded refrigerator, located in a junk pile of pole barn, to escape detection. STPSO Deputy Olivier, following the lead of his K-9 "Thor" traced Greenwood to the pole barn location. Prior to entry of the pole barn, commands were given by officers for the suspect to "drop it" and "show your hands". The latter commands were apparently given in view of a prior STPSO radio dispatch that claimed Greenwood was seen earlier carrying a knife. According to Olivier he also forewarned Greenwood of intentions to release the K-9 if Greenwood refused to exit the pole barn. Failing to receive response from Greenwood, Olivier released K-9 Thor into the barn. STPSO Sergeant Edwards and Deputy Olivier proceeded to climb over the junk pile in the pole barn from separate directions. Deputy Olivier testified he ordered Greenwood to release Thor and show his hands. Edwards testified that he also issued a similar command to Greenwood, without success. Edwards and Olivier feared Greenwood had stabbed K-9 Thor. At that time, according to both officers, Greenwood suddenly appeared before Edwards with a knife in a raised arm movement, causing both officers to shoot Greenwood several times. Tasers were also used against Greenwood as he was still holding the knife after being shot. Greenwood was pronounced

dead after being transported for emergency care.  K-9 Thor was treated for a knife wound by a local veterinarian.

Darien Greenwood's father, Richard Greenwood, timely filed this federal action on June 28, 2016 without realizing that his son had a surviving son.  Darien Greenwood had sought and obtained a state court order declaring him to be the biological father of the minor child, Kyle Vincent Plyler.  That order was issued on March 20, 2013.  As previously found by the Magistrate Judge, there is an indication that Defendants knew or should have known about this child prior to their discovery of his existence near the time of a February 20, 2018 status conference with the Court.  Rec. Doc. 158.  We adopt that un-appealed-from finding by the Magistrate Judge as supported by the record.

Plaintiff acknowledges that under Louisiana Civil Code Articles 2315.2 and 2315.3, survival and wrongful death actions create a ranking of a tort victim's beneficiaries preferring one surviving family member (the surviving son of the victim) over another (the surviving father of the victim).  However, Plaintiff extensively argues that his parental right to seek compensation for loss of association with his deceased son still exists under federal common law, without impact from the existence of his newly discovered grandson and state law.  We do not find legal support for that position.  The cases cited by Plaintiff are in opposition

to his position here and otherwise factually distinguished from the instant matter. *Pluet v. Frazier*, 355 F.3d 381, 283 (5th Cir. 2004) recited binding precedent that we must follow here.

To the extent Plaintiff claims Defendants intended to deprive him of his parental rights of association, the record offers no support for that assertion. In another context, and a very intriguing one, Plaintiff urges constitutional protection. However, we do not find support for constitutional protection from application of Louisiana's rationally-based ranking scheme here. That application allows surviving children to seek judicial recovery to the exclusion of all other classes of persons listed in the above-referenced codal articles, including surviving parents. Tempted as we are to find additional rational basis for giving protection to the latter class, in certain circumstances, we decline to do so in this instance. Perhaps a different result might occur had the surviving parent actually witnessed the moment of their child's death. The motion to dismiss for lack of standing must be granted.

### *Monell*, Qualified Immunity, Capacity & Conspiracy

Defendants have filed three motions for summary judgment asserting inter alia defenses under *Monell v. Dep't of Social Services of New York City*, 436 U.S. 658 (1978) and official capacity (Defendant Sheriff), qualified immunity and conspiracy

4

(all).  Rec. Docs. 63, 64, 65.  Plaintiff has filed opposition memoranda Rec. Docs. 90 and 128, and Defendants filed a reply, Rec. Doc. 162.  Oddly, Defendants' filings contain duplicative needless recitations of summary judgment principles throughout its various motions.  We trust that in the future a better sense of economy and time will prevail.

The following treatment of parties claims and defenses in this action is an alternative offering, submitted only to accommodate further review if Plaintiff is found to have standing to bring this action.

## 1. Monell & Supervisory Liability

Under *Monell*, Plaintiff must establish that the execution of a governmental policy, custom or practice was a moving force that led to a constitutional violation.  *Id.*; *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).  §1983 liability cannot be premised on the theory of respondent superior or an isolated act of a subordinate.  *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009); *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

Plaintiff cites in support of a *Monell* violation STPSO policy stating "An internal investigation shall be conducted after any deputy involved shooting."  It further states "During the internal investigation, the Department will do everything in its power to

avoid placement of any negative stigma on the deputy." Plaintiff concludes mainly through its expert witness, the policy "favors the officer's version of facts in any internal complaint investigation,…is biased self-serving and void of due process…[leading] to an unusual number of [constitutional] violations." The expert concludes that the STPSO policy "seems to caution investigators against total impartiality and more towards protecting the Sheriff's Office from stigma or liability." Rec. Doc. 69-4, pg. 9 (emphasis added). In reliance for conclusions about policy violations and failures to train, the same expert uses a previous fatal shooting of another war veteran. Rec. Doc. 69-4, pp. 6-8; *See Glover v. Deputy Pailet, et al*, CA 13-2984 (EDLA 5/13/15).

Defendants in counter-argument states the above policy is meant to discourage premature assumptions of guilt upon deputies who are facing investigations, criminally or administratively. Defendants rely upon a criminal investigation by its lead investigator for this incident that involved eleven assisting investigators, seven crime lab personnel, a review of voluminous documents, photographs, recordings, and interviews of thirty individuals, including Sgt. Edwards and Deputy Olivier. That investigation was summarized in a forty-three page "Investigative Report". Rec. Doc. 63-6, pp. 1-2 and Rec. Doc 30-4 Sealed.

To succeed on a § 1983 claim against a municipality, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). Thus, municipal liability under § 1983 requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

A municipality may be liable under § 1983 if it maintained a widespread, persistent practice of allowing the use of excessive police force. *See Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (*en banc*). In meeting their burden of showing that the municipality maintained such a practice, plaintiffs may attempt to prove other similar incidents of the use and toleration of excessive force. *See id*. It is also well-settled that "a City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens," and could be evidenced by a "purely formalistic investigation." *Piotrowski v. City of Houston,* 237 F.3d 567, 581–82 (5th Cir. 2001). Similarly, a municipality

may be liable under § 1983 for inadequate training of officers if the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989).

To satisfy the "moving force" element, a plaintiff must show culpability and causation. *Valle*, 613 F.3d at 542. A municipality is culpable under § 1983 if (1) an official policy is unconstitutional or (2) a facially innocuous policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407, 117 S.Ct. 1382). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Id*. A pattern of complaints by other citizens can evidence not only the existence of a policy but also deliberate indifference. *Id*. at 582. In addition to culpability, there must be a direct causal link between the municipal action and the deprivation of federal rights. *Id*. at 580.

Plaintiff is correct to question the impact of policy language that directs against "negatives stigmas" on STPSO deputies. Equally compelling is Defendants' response that the post-shooting

investigation was a criminal investigation that could not start with presumptive guilt of involved personnel.

Plaintiff's expert's reliance upon the Glover case is woefully misplaced. The deputy involved in that shooting death of a criminal suspect in March 2013 was exonerated based on qualified immunity, and *Monell* claims against TPSO were also dismissed. In dismissing the § 1983 excessive force claim the court found the use of deadly force was warranted because of Glover's threatened use of deadly force when he pointed a gun at the deputy sheriff in a tense, uncertain and rapidly evolving situation. The deputy's response was objectively reasonable in light of clearly established law. *Id.* at Rec. Doc. 99, pp. 28-31. Further, the court found no support for *Monell* or supervisory liability claims for lack of training or supervision because the alleged inadequacies in that regard were neither obvious nor obviously likely to result in a constitutional violation. *Id.*

Like the STPSO policy warning about stigmatizing deputies, the alleged failure to conduct an internal investigation after this shooting incident have not been shown to be the cause or likely cause of this fatal shooting. As seen earlier, there was an extensive investigation of this tragic event by STPSO over the course of about eight months. Numerous civilian and law enforcement witnesses were interviewed, including Sheriff Strain.

Plaintiff's expert also concludes that the alleged failures to train deputies on the characteristics and techniques for handling PTSD suspects were contributing factors. He also points to the lack of reporting forms from the involved deputies, failure to properly secure the crime scene, and await additional law enforcement help as causative training or supervision related faults.

Even "showing the 'obviousness' of a need for additional training" regarding the constitutional obligations of police officers may not be enough to establish deliberate indifference because it does not necessarily mean that the officers "will so obviously make wrong decisions that failing to train them amounts to a decision by the city itself to violate the Constitution." *Connick v. Thompson*, 131 S.Ct. 1350, 1365 (2011) (quotation and citation omitted). [P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct[,] will not suffice." *Id*. at 1363–64 (quotation omitted). To prove deliberate indifference, Plaintiff needs to show that the Sheriff "was on notice that, absent additional specified training, it was highly predictable that the [Deputy Sheriffs] ... would be confounded by those gray areas and make incorrect decisions as a result. In fact, Plaintiff has to show that it was so predictable

that failing to train the officers amounted to conscious disregard for Darien Greenwood's constitutional rights. *Id*. The Court finds that Plaintiff's claims for municipal liability against Defendants Sheriff, in his official capacity, against his successor in interest, and the St. Tammany Parish Sheriff's Office fail because Plaintiff has failed to demonstrate a municipal custom or policy by failing to show a pattern of similar violations. Reliance on the policies at issue has not been shown to be the moving force behind this incident. Plaintiff's opposition basically argues that acknowledging that the conduct of defendant deputies and others were consistent with the policies and regulations of STPSO creates a sufficient inference of an unlawful policy that caused a constitutional injury for judicial review. However, Plaintiff has produced no material evidence of a pattern of conduct to demonstrate a constitutionally deficient custom or policy. The questioned policies, while imperfect, cannot be presumed as the causative or driving forces here. Therefore, Defendants are entitled to summary judgment in their favor on the issue of municipal liability.

Defendants assert that Plaintiff's supervisory municipal liability claims fail because Plaintiff cannot prove deliberate indifference. Plaintiff maintains that Defendants' approval of the

allegedly objectionable behavior evidences a deliberate indifference.

Supervisory liability under Monell requires Plaintiff to demonstrate that "1) the supervisor either failed to supervise or train the subordinate official, 2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and 3) the failure to train or supervise amounts to deliberate indifference." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). In order to establish deliberate indifference, plaintiffs "usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and likely to result in a constitutional violation." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (*quoting Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)); see also *Johnson v. Deep E. Tex. Reg'l Narcotics*, 379 F.3d 293 at 310 (*quoting Fraire v. City of Arlington*, 957 F.2d 1268, 1268, 1281 (5th Cir. 1992) ("must be more than a mere 'but for'")) A pattern also requires "sufficiently numerous prior incidents," as opposed to "isolated instances". *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989); *Cf. Peterson v. City of Fort Worth*, Tx. 588 F.3d 838, 852 (5th Cir. 2009).

To hold the Sheriff liable personally, Plaintiff must establish either that " '(1) he affirmatively participate[d] in

12

the acts that cause[d] the constitutional deprivation, or (2) he implement[ed] unconstitutional policies that causally result[ed] in the constitutional injury.'" *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir.2011) (*quoting Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir.2008)). "It is facially evident that this test cannot be met if there is no underlying constitutional violation." *Rios v. City of Del Rio*, 444 F.3d 417, 425-26 (5th Cir.2006) (*citing Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir.2000)).

As in *Barrios-Barrios v. Clipps*, 825 F.Supp.2d 730 (E.D.La. October 20, 2011), the same plaintiff's expert again offers opinions that are speculative, conclusory, unsupported by the facts and insufficient to show deliberate indifference. As noted earlier, he relies upon a prior case against the STPSO without acknowledging it too, unlike his opinions, found no support for *Monnel*, deliberate indifference and excessive force claims.

Plaintiff produces no evidence of a pattern of violations, and therefore cannot prove deliberate indifference by Defendants. Therefore, Defendants are entitled to summary judgment in their favor on the issue of supervisory municipal liability.[1]

---

[1] A lawsuit against a government officer "in his official capacity" is no different from a suit against the government entity of which he is an agent. *Burge v. Parish of St. Tammany (Burge I)*, 187 F.3d 452, 468 (5th Cir. 1999). As such, the Court has treated Plaintiff's claims for municipal liability against the Sheriff, his supervisory personnel, in their official capacity,

**2.  Qualified Immunity**

When plaintiffs seek money damages from government officials for alleged violations of constitutional or statutory rights, officials sued in their individual capacities may invoke the defense of qualified immunity. Because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(per curiam).

"Qualified immunity shields government officials from civil damages liability," the U.S. Supreme Court has reiterated, "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012)(citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2080 (2011)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(This doctrine protects government officials against individual civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "Qualified immunity balances two important interests –

---

and against the STPSO as an action against the municipality, St. Tammany Parish.

the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))(citations omitted); *see also Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001)("even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity")(citation omitted); *see also Brady v. Fort Bend County*, 58 F.3d 173, 174 (5th Cir. 1995) (observing that "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law.").

Although qualified immunity is 'normally an affirmative defense," the plaintiff bears a heightened pleading burden 'to negate the defense once properly raised.'" *Newman v. Guedry*, 703

F.3d 757, 761 5th Cir. 2010) (*citing Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).

Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

Asserting qualified immunity, Defendants submit that summary judgment dismissing Plaintiff's Section 1983 excessive force claim against them is warranted because the use of deadly force in response to the imminent threat posed when Darien Greenwood moved towards Sgt. Edwards with a raised knife in his hand in a confined and closed proximity was objectively reasonable in light of clearly established law. Plaintiff counters that Sgt. Edwards and Deputy Olivier created the dangerous encounter and, in so doing, acted unreasonably by shooting Darien instead of engaging him in dialogue, waiting for backup, and/or otherwise seeking attention for a suspected PTSD person. All notwithstanding that Darien Greenwood clearly held a knife and demonstrated intent to use it in further resistance to capture and arrest. Because Plaintiff has failed to carry his burden to submit evidence that creates a genuine dispute as to a material fact concerning whether the

officers' conduct was objectively unreasonable in light of clearly established law, Defendants must prevail on their defense of qualified immunity as to Plaintiff's excessive force claim.

A reasonableness inquiry calls for an examination of the totality of the circumstances. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 411 (5th Cir. 2009). The reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citation omitted). Indeed, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-97. Because an objective reasonableness inquiry does not lend itself to mechanical application, context is key. If an "officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others," then as a matter of law an officer's use of deadly force is not excessive. *See Manis*, 585 F.3d at 843.

Although the Court must examine the totality of the circumstances, particular factors relevant to the reasonableness inquiry include: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officer's or others'

safety; and (3) whether the suspect actively resisted arrest or attempted to flee. *Graham*, 490 U.S. at 396 (*citing Garner*, 741 U.S. at 8-9).

Defendants submit that the resort to deadly force was reasonably proportionate to the circumstances facing them. Plaintiff argues that Edwards and Olivier created the dangerous encounter and should have responded differently.

It is clearly established that "Supreme Court precedent and cases in this circuit authorized deadly force when an officer had 'probable cause to believe that the suspect pose[d] a threat of serious physical harm.'" *Manis*, 585 F.3d at 845-46 (citing *Garner*, 471 U.S. at 11-12). More specifically, the Fifth Circuit has affirmed the district court's determination that police officers' response, in shooting and killing a man who confronted officers in his bedroom with a knife raised in his hand, was objectively reasonable. *See Harris v. New Orleans Police Department*, 2013 WL 1335613 (E.D. La. 2013)(Vance, J.), *aff'd*, 745 F.3d 767 (5th Cir. 2014), *cert. denied*, 135 S.Ct. 137 2014). The Fifth Circuit "has [even] found an officer's use of deadly force to be reasonable when a suspect moves out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon." *Manis*, 585 F.3d at 844 (noting that the plaintiffs "do not dispute the only fact material to whether [the officer, who

fired four shots at the suspect] was justified in using deadly force: that Manis reached under the seat of his vehicle and then moved as if he had obtained the object he sought."); *Ontiveros*, 564 F.3d at 383 n.1 (noting that "[e]xcessive force incidents are highly fact-specific and without cases squarely on point, officers receive the protection of qualified immunity.")(citation omitted). "If the law at the time of a constitutional violation does not give the officer 'fair notice' that his conduct is unlawful, then the officer is immune from suit." *Manis*, 585 F.3d at 845-46. It is underscored that "[t]his standard thus protects an officer with a mistaken, yet reasonable, understanding of the law from the 'hazy border between excessive and acceptable force.'" *Id.* at 846 (citations omitted).

STPSO Defendants Edwards and Olivier were pursuing a fleeing home burglary suspect, Darin Greenwood. It was reported that Darien was armed with a knife. Upon finding Darien in his hideout location, the officers saw him holding a knife which he raised towards Sgt. Edwards and refused to drop it, clearly posing an immediate threat to the safety of Sgt. Edwards and possibly others. *Cf*. *Graham*, 490 U.S. at 396; *see also Rockwell v. Brown*, 664 F.3d 985, 992 (5th Cir. 2011) *cert. denied*, 132 S.Ct. 2433 (2012) (observing that not all of the Graham factors need "be present for an officer's actions to be reasonable; indeed, in the typical case,

it is sufficient that the officer reasonably believed that the suspect posed a threat to the safety of the officers or others."). The Court finds that undisputed material facts support a finding that Edwards and Olivier acted in conformance with an objectively reasonable officer at the scene of a tense and rapidly evolving situation in which the suspect's conduct posed an imminent risk of serious harm to their safety. No material facts in the record call into question the objective reasonableness of Sgt. Edwards and Deputy Olivier's resort to deadly force and tasing under tense and crowded circumstances by a suspect who apparently resisted to the bitter end.

Plaintiff's several arguments do not create a genuine dispute as to any material fact regarding the reasonableness of Defendants' use of deadly force. Foremost, Plaintiff insists that the objective reasonableness of Defendants' use of deadly force is for the jury. However, their position is undermined by the nature of qualified immunity and the many cases assessing the reasonableness of the use of deadly force that are decided on summary judgment. Plaintiff suggests that the jury could very reasonably believe that Defendants' version of facts lacks credibility. But Plaintiff "may not defeat summary judgment by merely asserting that the jury might, and legally could, disbelieve the defendant[]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Plaintiff submits a host of possibilities in opposing qualified immunity; (a) Deputy Olivier did not as he testified orally command Darien Greenwood to come out of hiding or warn of the K-9's release; (b) Darien did not have a knife in his hand; (c) Defendants' conduct was not the most reasonable because they had other alternatives, such as waiting for backup, taking cover, or using negotiation.

Insofar as Plaintiff seeks to question Defendants' account of the events because their account is self-serving and untruthful, Plaintiff fails to consider that, even in cases in which the defendant law enforcement officers are the only ones offering an account of their actions, the officers' actions, if not controverted by other competing material evidence in the record, may still be found to be reasonable, and the officers' account might suffice to grant qualified immunity. *See Ontiveros*, 564 F.3d at 383; *see also LaFrenier*, 550 F.3d at 168 (noting that the plaintiff must put material facts in dispute even where the movant relies on the testimony of an interested witness; "[t]he Fifth Circuit has . . . refused to allow a nonmovant to defeat summary judgment where, as here, he or she 'points to nothing in the summary judgment record that casts doubt on the veracity of the [witness's] version of the events."). That Defendants' narratives are the only full accounts do not *per se* cast doubt on its veracity;

Plaintiff must offer or point to other *evidence* that contradicts or undermines their account; skepticism and conclusory testimony are insufficient. *See Ontiveros*, 564 F.3d at 383 (upholding as reasonable police officer's conduct when he was the only witness to the shooting). Admittedly, this is difficult where, as here, Darien - the only other eye witness to challenge Defendants' account - is deceased. Nevertheless, there is uncontroverted evidence that corroborates the material portions of Defendants' account, and Plaintiff offers no evidence that would undermine a finding that Defendants acted reasonably under the circumstances. Focusing on the seconds just before Sgt. Edwards first fired on Darien and putting aside the facts that Plaintiff submits are disputed: Darien was on the run, took extreme measures to avoid capture, carried a knife throughout, apparently used it on the K-9, and suddenly appeared to use it on Sgt. Edwards in a closely confined and cluttered space. This was the tense scene that Sgt. Edwards faced when he and Olivier made the split-second decision to use deadly force.

The outcome of the objective reasonableness inquiry is not altered by viewing in the Plaintiff's favor his submitted version of events. Even assuming that the shooting occurred more than arms length away, that no warnings were given, that there was a premature release of the K-9, and that tasers were used prior to

or after the shootings, at most, a jury might be entitled to infer that Defendants were negligent. But the Plaintiff's spin on the facts do not change the critical inquiry here: whether a reasonable officer in Defendants' shoes reasonably perceived that Darien posed an imminent threat of bodily harm or death. Indulging Plaintiff's take on the facts do not undermine the objective threat posed to Sgt. Edwards and others by a man standing a few feet away, holding a knife, facing him in tight quarters, who continues to resist capture over several hours after committing a home burglary earlier, who used the knife to stab the K-9, and who dangerously confronts him with the knife. Plaintiff improperly asks to assess the reasonableness of Defendants' use of force "with the 20/20 vision of hindsight." *See Graham*, 490 U.S. at 396 (citation omitted). It is settled that the Court's inquiry on excessive force is more confined; the Court asks only whether the officer or another person was in danger at the moment of the threat that resulted in the use of deadly force. That is, even if the Court were to assume that Defendants negligently failed to yell clear commands, or negligently failed to attempt to negotiate with Darien, such a determination would not undermine a finding of objective reasonableness in Defendants' use of deadly force under the circumstances. *Cf. Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985)(finding that officer's use of deadly force

was reasonable even where the arrest was "negligently executed"); *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)("the magistrate judge improperly criticized [the officer's] failure to consider the use of non-lethal force or to employ a crisis negotiator").

The evidence of record shows that Defendants' use of deadly force was objectively reasonable in light of clearly established law. The undisputed facts show that Defendants reasonably believed that Darien's threatened use of a knife up against Sgt. Edwards posed a significant threat of death or bodily injury. Plaintiff's final contention that firing seven shots and using tasers were excessive tactics is unsupported by the summary judgment record.

The Coroner's Autopsy Protocol contains a diagram of Darien Greenwood's body, with the locations of gunshot entry and exit points. The record also contains photographs of a mannequin that was used in connection with the deposition of the pathologist who performed the autopsy of Darien. The photographed mannequin is marked with stickers and labels to reportedly show the entrance and exit gunshot wounds corresponding with the autopsy report. Rec. Doc. 128-4, pp. 2, 13-16. The aforementioned documents show gunshot entry and exit locations on the front, side and back of the body. Plaintiff concludes excessive force is shown when most entry points are located in the back parts of the body. Under the

24

evolving circumstances, a reasonable person facing imminent death, as here, would have to act quickly to remove that threat, especially where there is no quick escape from the nearby source of danger, nor convenient opportunity to carefully aim all or most gunshots in this life threatening situation.

Plaintiff urges us to focus not on the moment before Sgt. Edwards fired the first shot but, rather, to isolate focus on the moment before the fatal shot or taserings, relying mainly upon his expert's conclusions. The critical inquiry focuses on whether a reasonable officer in Sgt. Edwards and Deputy Olivier's position would reasonably perceive an imminent threat of bodily harm. "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or others." Ontiveros, 564 F.3d at 382; *Thompson v. Mercer*, 762 F.3d 433 (5th Cir. 2014) (observing that the "use of deadly force is not unreasonable when an officer would have reason to believe the suspect posed a threat of serious harm to the officers or others.")(citation omitted). That Plaintiff believes Darien could no longer adequately endanger anyone once he had fallen down is insufficient where, as here, Plaintiff points to no evidence that raises a genuine dispute as to a material fact concerning whether Defendants' resort to deadly force was unreasonable. Although the Court must "resolve factual

controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

Plaintiff offers no evidence that would call into question Defendants' account; plaintiff's expert simply questions whether the fatal shot and tasering were necessary. The standard applicable to qualified immunity inquiries respecting deadly force "protects an officer with a mistaken, yet reasonable, understanding of the law from the 'hazy border between excessive and acceptable force.'" *Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009). The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," (as here) summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). At the time of the shooting, it was clearly established that deadly force is authorized when an officer had "probable cause to believe that the suspect pose[d] a threat

of serious physical harm." *Garner*, 471 U.S. at 11-12. The Court finds that controlling authority did not prohibit Defendants' use of deadly force and tasers in the situation confronting them. And "even if contrary authority existed, the 'cases taken together [would] undoubtedly show that this area is one in which the result depends very much on the facts of each case' and certainly would not 'clearly establish' that [Defendants'] conduct violated the Fourth Amendment." *See Manis*, 585 F.3d at 846 (citation omitted). Plaintiff has failed to overcome Defendants' defense of qualified immunity.

### 3.  <u>Conspiracy</u>

Plaintiff's conspiratorial allegations against Defendants, including Sgt. Canizaro, are based on assumptions that the post-shooting investigation by STPSO was neglectful and, at worst, suborned perjury. Plaintiff's expert concludes for instance that there were failures to properly preserve the scene of the shooting, require involved personnel to fill out certain forms, embellished words and prepped witnesses to describe the movement of Darien Greenwood as he appeared before Sgt. Edward and Deputy Olivier with knife in hand, and failed to give Miranda and other warnings prior to pertinent interviews.

Effective attorneys routinely engage in prepatory work with witnesses prior to depositions, trials, etc.  Investigators, as

here, investigate by interviewing witnesses, gathering documentary evidence, and preparing reports of their findings and conclusions. The use of similar language or the same words occasionally do not, *per se*, constitute evidence of falsehoods or impropriety. Descriptive words like lunge, moved towards, threatened, etc. to describe Darien Greenwood's actions prior to the shooting, emanating from witnesses and/or the investigator's interpretation of factual representations of witnesses, and vice versa, do not alter the objective analysis here. Plaintiff's attorney described or gave his interpretation of Darien's movements based on deposition testimony by Sgt. Edwards and Deputy Olivier as follows:

> "Greenwood allegedly raised the knife … swung his right arm in a manner so as to stab downward towards Edwards with the knife …" Rec. Doc. 128, pp. 8-9.

According to Plaintiff, the use of the word "lunge" in Canizaro's report of Darien Greenwood's actions towards Sgt. Edwards, the absence of that word in deposition testimony by Sgt. Edwards and Deputy Olivier, and its use in Defendants' subsequent history of uncontested facts, somehow, is a "discrepancy [that] gets at the heart of the issue of material facts that remains to be determined by the jury…" *Id*. at 8 n. 35. A lunge or a raising of a knife in hand in a manner to stab Sgt. Edwards is not an

inconsistency that materially clouds the objective reasonableness of the officers' actions. Nor is it evidence of conspiratorial misconduct.

Plaintiff's conspiracy allegations against Canizaro state he "conspire[d] to cover up and … participate[d] in a cover up of unconstitutional actions of the [STPSO]… by reporting or failing to report or misreporting salient facts[.]" Rec. Doc. 16, p. 2. Plaintiff fails to present material facts to establish those allegations or show material facts in dispute. Canizaro's investigation was extensive, involving numerous interviews and other materials, lasting about eight months. It was not a "purely formalistic investigation." Quote from *Piotrowski*, *supra*, at 581-82.

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc*., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted). Plaintiff has not shown the existence of a material factual dispute relative to instant conspiracy claims.

Plaintiff has conceded to the granting of summary judgment on similar conspiracy claims involving Lieutenant Greg Gonzales, dismissing him from this action. In that regards, Plaintiff asserts "his role in the matter [is] tangential and limited." Rec. Doc. 128, p.1.

### 4. State Claims

Lastly, Defendants seek summary judgment on Plaintiff's claims brought under Louisiana Civil Code Articles 2315 and 2316. Plaintiff alleges in that regards that Defendants are liable for

negligence, assault, battery, murder, and the negligent and intentional infliction of emotional distress. Rec. Doc. 1, p.4.

For reasons given earlier, Plaintiff lacks standing to assert those claims. Alternatively and by electing to brief only the federal claims, Plaintiff appears to have waived his state law claims or conceded they are derivative to federal claims. To the extent Plaintiff's state law claims are derivative of his §1983 claims, the claims must be dismissed. *Gravolet v. Tassin*, 2009 WL 1565864 *4 (E.D. LA 2009); *Harrison v. State*, 321 So.2d 458, 462-63 (LA. 1998). Further, the above noted facts and law support a finding of discretionary act immunity under state law, LA. R.S. § 9:27981.

For the forgoing reasons, summary judgment is **GRANTED**, dismissing Plaintiff's federal and state law claims against Defendants. It is further ordered that all pending motions are dismissed in view of above considerations.

New Orleans, Louisiana, this 28th day of September, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE

31